UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAELS STORES PROCUREMENT CO., INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-1436-B |
| DMR CONSTRUCTION, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Michaels Stores Procurement Co., Inc.'s Motion for Entry of Default Judgment (Doc. 9), filed on August 6, 2018, against Defendant DMR Construction, Inc. For the reasons discussed below, the Court **ENTERS an ORDER OF DEFAULT JUDGMENT** against Defendant. Further, the Court **GRANTS in part** and **DENIES in part** Plaintiff's request for damages.

### I.

### BACKGROUND[1]

This case arises from a construction agreement (the Agreement) between Plaintiff and Defendant. Plaintiff, the procurement arm of Michaels Companies, Inc., entered into the Agreement with Defendant, a general contractor that specializes in commercial construction projects, to build

---

[1] Because Defendant has failed to answer, the Court accepts as true the well-pleaded allegations of facts in the Complaint (Doc. 1). *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

a new Michaels retail store at the Mall at Cross County in Yonkers, New York (the Property). Doc. 1, Compl., ¶¶ 6–9. Per the Agreement, Defendant was to complete construction of the store for $1,064.875.40. Doc. 1, Compl., ¶ 11. Defendant specifically agreed to pay its subcontractors and promptly resolve any liens on the property traceable to Defendant's or subcontractors' actions. Doc. 1, Compl., ¶¶ 12–13. However, in early 2018, Plaintiff discovered that Defendant had failed to pay multiple subcontractors, resulting in several liens on the Property. Doc. 1, Compl., ¶¶ 14–15. Due to Defendant's refusal to pay its subcontractors, Plaintiff ultimately paid the subcontractors directly to avoid defaulting on its lease with the Yonkers mall, Doc. 1, Compl., ¶ 19, and expects to additionally pay any and all remaining amounts owed to subcontractors related to the Agreement, Doc. 9, Pl.'s Mot. Default J., 2. This causes Plaintiff to be responsible for $480,036.95 beyond the Agreement price. Doc. 9, Pl.'s Mot. Default J., 2.

Plaintiff filed this case on June 5, 2018, alleging that Defendant's non-performance of the terms of the Agreement constituted a breach of contract. Doc. 1, Compl., ¶ 24. On June 7, 2018, process was served on Defendant. Doc. 6., Summons, 2. Defendant failed to answer or otherwise defend itself within the time allowed. Consequently, on July 2, 2018, the Clerk of the Court entered a default (Doc. 8) against Defendant. Plaintiff filed its present motion (Doc. 9) on August 6, 2018. In support for its motion, Plaintiff filed an Appendix (Doc. 10) that included: the Declaration of Michael Krupinski, the Manager of Construction and Store Development for the Michaels Companies, Inc.; copies of checks reflecting direct payments made to subcontractors; and various documentation—including emails, quotations, invoices, and notices under mechanic's lien's law—showing payments reasonably expected to be made to subcontractors. Doc 10, App., 1–3, 41–78. Defendant has again failed to respond. Plaintiff's motion is now ripe for review.

## II.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H Inc.*, 967 F.2d 194, 205 (5th Cir. 1992). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr.*, 515 F.2d at 1206.

In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *See, e.g., Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *2–3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether the entry of default judgment is appropriate under the circumstances. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

# III.

# ANALYSIS

*A.    Whether Default Judgment is Appropriate*

In deciding whether default judgment is appropriate, the Court considers the six factors outlined in *Lindsey*. Applying them to this case, the Court finds that they weigh in favor of default. First, Defendant has not filed any responsive pleadings. Consequently there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Defendant's "failure to respond threatens to bring the adversary process to halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default have been clearly established by Defendant's failure to respond to the Complaint and the Entry of Default by the Clerk. Fourth, there is no evidence before the Court to indicate that Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, Defendant has had plenty of time—over four months—to answer and has filed nothing with the Court to explain its reticence. *C.f. Elite v. The KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000)(per curiam)(holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fifth, Plaintiff only seeks the relief to which he is entitled under law, mitigating the harshness of default judgment.  And sixth, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendant. *See id.* Therefore, the Court concludes that default judgment is proper.

B.  *Whether There is a Sufficient Basis for Judgment in the Pleadings*

Due to its default, Defendant is deemed to have admitted the allegations of breach of contract set forth in the Complaint. Nonetheless, the Court must review the pleadings to determine whether Plaintiff can establish a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). Under Texas law, the essential elements of a breach of contract claim are: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

In deciding whether there is a sufficient basis in the pleadings, the Court considers the four elements outlined in *Smith.* Applying them to this case, the Court finds there is a sufficient basis for judgment in the pleadings. First, the Complaint alleges that the Agreement entered by Plaintiff and Defendant constituted a contract. Doc. 1, Compl. ¶¶ 9, 24. Plaintiff attached a copy of the signed and executed Agreement and Agreement Addendum as evidence. Doc. 10, App., 4–40. The parties agreed that: "It is the responsibility of the General Contractor [Defendant] to maintain a lien-free job throughout the project and up to final completion." *Id.* at 10 (§ 9.1.3.7). In addition, § 9.6.8 as added by the Agreement Addendum makes clear Defendant's responsibility to discharge liens filed as a result of Defendant's or subcontractors' activities. *Id.* at 26. Second, via the Krupinski Declaration, Plaintiff alleges that it tendered performance by paying Defendant $866,252.88 under the Agreement. Doc. 10, Krupinski's Decl., ¶ 9. Third, the pleadings allege that Defendant breached

the contract by failing to pay multiple subcontractors, resulting in several liens on the Property. Doc. 1, Compl., ¶¶ 14–15. And fourth, Plaintiff alleges that Defendant's breach forced Plaintiff to pay the subcontractors directly, Doc. 1, Compl., ¶ 19, and expects the breach will require Plaintiff to additionally pay any and all remaining amounts owed to subcontractors related to the Agreement, resulting in damages in the amount of $480,036.95, Doc. 9, Pl.'s Mot. Default J., 2. Thus, accepting Plaintiff's allegation as true based on Defendant's default, the Court decides that there is a sufficient basis in the pleadings for the requested default judgment as to the breach of contract claim.

C.   *Damages*

Plaintiff requests (1) unliquidated damages, (2) post-judgment interest, (3) attorney's fees, and (4) costs. The Court considers each of Plaintiff's monetary requests in turn.

   1.   Unliquidated Damages

The Court considers Plaintiff's request for $480,036.95 in unliquidated damages. Doc. 9, Pl.'s Mot. Default J., 6. "A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524-25 (5th Cir. 2002)). Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 370 (5th Cir. 1993). It remains the plaintiff's burden to provide an evidentiary basis for the damages it seeks. *Broad. Music, Inc. v. Bostock Billiards & Bar Assoc.*, No. 3:12-CV-413-B, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013). Courts have found that copies of contracts, invoices, purchase orders, emails with

payment details, and statements of anticipated costs, together with computations and affidavits, are a sufficient evidentiary basis for damages. *See Genesis Servs., Inc. v. Screens Plus, Inc.*, No. 6:16-CV-00613, 2016 WL 7036791, at *6 (W.D. La. Nov. 7, 2016) (holding that copies of invoices and affidavits were sufficient evidence to mathematically calculate damages); *Jetstream of Houston, L.L.P. v. Cajun Pressure Control, L.L.P.*, No. 15-2559, 2016 WL 3024751, at *4 (W.D. La. Apr. 15, 2016) (holding that affidavits, copies of contracts, and invoices were enough evidence to show entitlement to damages); *Floral Shipping Ltd. Egyptian Bulk Carriers*, No. 14-879, 2015 WL 13534016, at *4 (E.D. La. Apr. 24, 2015) (holding that invoices, a statement reflecting anticipated costs, and an affidavit were sufficient evidence to mathematically calculate damages); *Valdes-Fauli v. Medford*, No. 11-618, 2011 WL 2790193, at *3 (E.D. La. July 15, 2011) (finding that an email agreement to an installment payment plan and an affidavit were sufficient evidence to mathematically calculate damages).

Plaintiff requests $480,036.95 of unliquidated damages based on the amount already directly paid to subcontractors, the amount it reasonably expects to pay to subcontractors, and the remaining balance due to Defendant. Doc. 10, Krupinski's Decl., ¶¶ 9–12. In support of its request, Plaintiff has, for the most part, provided evidence of the type readily accepted by our sister courts as cited above. *E.g. Genesis Servs.*, 2016 WL 7036791, at *6. Plaintiff submitted checks showing payments totaling $537,964.27,[2] in support of the amount directly paid to subcontractors. Doc. 10, App.,

---

[2] Plaintiff paid the following amounts to the listed subcontractors: $9,180.00 to Ambient Flooring, Doc. 10, App., 43–44; $162,438.35 to Cara Vaggios HVAC Maintenance and Repair, *id.* at 52; $159,248.74 to ER Electric, *id.* at 45, 50–51; $17,820.00 to H&L Ironworks, *id.* at 48; $23,899.15 to Red Hawk Fire & Security, *id.* at 49; $99,558.03 to Rotundo Plumbing, *id.* at 46–47; and $65,820.00 to Tipp Floor Covering, *id.* at 41–42.

41–52. The Krupinski Declaration affirms this amount. Doc. 10, Krupinski's Decl., ¶ 11. The Court accepts the direct payment amounts and their supporting documentation.

In support of the amount it reasonably expects to pay to subcontractors, Plaintiff submitted various documentation—including emails from subcontractors, quotations, invoices, and notices under mechanic's lien's law—showing reasonably expected payments totaling $140,695.20.[3] *Id.* at 53-77. Again, the Krupinski Declaration affirms this total amount. Doc. 10, Krupinski's Decl., ¶ 11. The Court accepts the reasonably expected payment amounts and their supporting documentation, with the exception of $32,000.00 in expected payment to subcontractor Keane Painting because there is no written document to support that amount. *See* Doc. 10, App., 64, 78. Accordingly, Plaintiff has provided sufficient evidence for reasonably expected payment damages totaling $108,695.20.

Finally, in support of the remaining balance, Plaintiff provided the Krupinski Declaration explaining that Plaintiff had made partial payments to Defendant, leaving a remaining balance of $198,622.52 under the Agreement. Doc. 10, Krupinski's Decl., ¶ 9. The Court accepts these partial payment amounts and their documentation. Ultimately, the Court finds that the amount of damages owed to Plaintiff by Defendant is capable of mathematical calculation based on Plaintiff's appendix and supporting documents.[4] Therefore, the Court grants Plaintiff's request for damages in the

---

[3] Plaintiff expects to pay the following amounts to the listed subcontractors: $17,576.98 to Acme Millwork, Doc. 10, App., 53; $423.94 to Bass Security Services, *id.* at 59; $6,856.90 to Cornell Storefront Systems, *id.* at 56; $15,000.00 to Jorich Construction, *id.* at 65; $32,000.00 to Keane Painting, *id.* at 64; $32,545.81 to LA Dickson Interiors, *id.* at 74; $9,972.95 to Saft, *id.* at 70; $1,945.32 to SaniPro Disposal Services, *id.* at 68; $10,008.19 to Sunbelt Rentals, *id.* at 66; and $14,365.11 to Tormax, *id.* at 60.

[4] Specifically, ($537,964.27 + [$140,695.20 − $32,000]) − ($1,064,875.40 − $866,252.88) = $448,036.95.

amount of $448,036.95.

2. Post-Judgment Interest

The Court also considers Plaintiff's request for post-judgment interest at the statutorily determined rate. Doc. 9, Mot. Default J., 6. "Interest shall be allowed on any money judgment in a civil case recovered in district court." 28 U.S.C. § 1961(a). Simply put, district courts do not have the discretion to deny post-judgment interest on monetary judgments. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010)). Thus, post-judgment interest "shall be calculated from the date of the entry of judgment, at rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve system, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Therefore, the Court grants Plaintiff's request for post-judgment interest on all damages awarded herein, at the statutory rate,[5] from the entry of this Final Default Judgment until paid.

3. Attorney's Fees and Costs

Finally, the Court consider's Plaintiff's request for attorney's fees and costs.

*1. Attorney's fees*

In its Complaint—but not in its Motion—Plaintiff requests an award of reasonable attorney's fees. Doc. 1, Compl., ¶ 30. A prevailing party in a civil action may recover attorney's fees from a corporation in a claim for a written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8); *see also* Fed. R. Civ. P. 54(d)(2). However, Plaintiff's request is problematic because Plaintiff does not provide

---

[5] The post-judgment interest rate may be found at: *Post Judgment Interest Rates*, U.S. DIST. CT. N. DIST. TEX., http://www.txnd.uscourts.gov/post-judgment-rates.

any documentation in support of its request. Plaintiff does not include billing records from its attorney nor any other evidence of attorney's fees incurred in pursuing this claim. *C.f. Fazeli v. Saleh*, No. 3:16-CV-749-B, 2018 WL 4539093, at *6 (N.D. Tex. Sept. 21, 2018)(plaintiff provided a declaration of his attorney and billing records of his law firm in support of his request for attorney's fees). As a result, the Court has no basis by which to analyze and determine an award of reasonable attorney's fees. Therefore, the Court denies Plaintiff's request for reasonable attorney's fees absent any supporting documents.

   *2.   Costs*

Plaintiff requests an award of costs in both its Complaint, Doc. 1, Compl. ¶ 30, and its Motion for Default Judgment, Doc. 9, Mot. Default J., 6. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* Fed. R. Civ. P. 54(d)(1). However, similarly to its request for attorney's fees, Plaintiff's request is problematic because Plaintiff does not provide any documentation in support of costs incurred in pursuing this claim. *C.f. Fazeli,* 2018 WL 4539093, at *2 (N.D. Tex. Sept. 21, 2018)(plaintiff provided a declaration of his attorney in support of his request for costs). As a result, the Court has no basis by which to analyze and determine an award of costs. Therefore, the Court denies Plaintiff's request for costs absent any supporting documents.

## IV.
## CONCLUSION

For the above-stated reasons, the Court **ENTERS an ORDER OF DEFAULT JUDGMENT** against Defendant. Further, the Court **GRANTS in part** and **DENIES in part** Plaintiff's request for damages. Specifically, the Court **GRANTS** Plaintiff's request for damages in

the amount of $448,036.95. Additionally, the Court awards Plaintiff post-judgment interest on all sums awarded herein, at the statutory rate, from the entry of this Final Judgment until paid.

However, the Court **DENIES without prejudice** Plaintiff's request for damages for the expected payment amount of $32,000.00 for subcontractor Keane Painting, attorney's fees, and costs. Plaintiff may supplement the record as addressed above no later than **30 DAYS** from the date of this Order. Plaintiff should include along with its supplemental briefing any contracts, invoices, purchase orders, or emails with specific amounts substantiating the expected payment amount to Keane Painting; and any and all attorney declarations, billing records, or other evidence that it may have to substantiate the amount of attorney's fees and costs incurred in pursuing this claim; or Plaintiff may provide an affidavit explaining why it is unable to supply the requested documents. Failure to supplement by the above-listed date may result in the remainder of Plaintiff's claims being dismissed.

SO ORDERED.

SIGNED: October 23, 2018

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE